## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **DAWN POWELL,** Individually, | : | **Case No. 2:12-cv-70** |
| | : | |
| **Plaintiff,** | : | **Judge:** |
| | : | |
| -vs- | : | **Magistrate Judge:** |
| | : | |
| **FRANKLIN COUNTY, OHIO,** | : | |
| | | **Complaint For Damages** |
| **ZACH SCOTT**, SHERIFF, FRANKLIN COUNTY, OHIO | : | |
| In his official capacity, | : | |
| | | |
| **MARK BARRETT**, FRANKLIN COUNTY SHERIFF'S OFFICE CHIEF DEPUTY, CORRECTIONS, | : | **Jury Demand Endorsed Hereon** |
| | : | |
| Individually and in his official capacity, | : | |
| | : | |
| **MARTIN BUECHNER,** FRANKLIN COUNTY SHERIFF'S OFFICE CHIEF DEPUTY, INVESTIGATIONS, | : | |
| Individually and in his official capacity, | : | |
| | | |
| **EARL SMITH,** FRANKLIN COUNTY SHERIFF'S OFFICE FORMER ACTING CHIEF DEPUTY, INVESTIGATIONS, | : | |
| Individually and in his official capacity, | : | |
| | : | |
| **STEPHAN L. MARTIN,** FORMER FRANKLIN COUNTY SHERIFF'S OFFICE CHIEF DEPUTY, INVESTIGATIONS, | : | |
| Individually, | : | |
| | : | |
| **DOUGLAS EDGINGTON** FACILITY COMMANDER, FRANKLIN COUNTY CORRECTIONS CENTER II (FCCC II) | : | |
| Individually and in his official capacity, | : | |
| | : | |

**ROBERT FORINO**
**STEPHANIE KLUMPP**                            :
**GEOFFREY STOBART**
**CHARLES WILLIAMSON**                          :
**MICHAEL DERRICO**
**ANDREW EING**                                 :
FRANKLIN COUNTY DEPUTIES OF THE
INTERNAL AFFAIRS BUREAU WHO                     :
REVIEWED AND INVESTIGATED USE
OF FORCE REPORTS                                :
Individually and in their official capacities,
                                                :
                                                :
**FRANKLIN COUNTY SHERIFF'S**
**DEPUTIES:**                                   :

**ED SCHILLIG**                                 :
**LAURA MARTIN**
**JEFFREY BARRETT**                             :
**CHARLES DAVIS**
**JASON WEBER**                                 :
**SHANNON BEAUDRY**
**CHARLES COAKLEY**                             :
**EDWIN MERRITT**
**KELLY RETTIG**                                :
**MATTHEW STICE**
**BRANDON HALL**                                :
**YVETTE BARNES**
**SHANNON CLYBURN**                             :
**TONY KING**
**DAVID MAYNARD**                               :
**JONATHON STICKEL**
Individually,                                   :

**DOUG HAHN,** Franklin County Sheriff's        :
Office Mental Health Liaison,
Individually,                                   :

Defendants.                                     :

## I.    INTRODUCTION

1.    Each paragraph in this Complaint incorporates all others.

2.    This Complaint challenges the practice of subjecting detainees at the Franklin

County Corrections Centers to the excessive and disproportionate use of force by corrections deputies of the Franklin County Sheriff's Office.

3.      This challenged practice is carried out through the frequent and gratuitous use of tasers to inflict pain, fear, corporal punishment and humiliation.

4.      Tasers deliver a minimum 5-second 50,000 volt electrical shock that causes excruciating pain.  *Landis v. Baker*, 2008 U.S. App. LEXIS 21946, at *6 n.4 (6th Cir. 2008). Deputies are able to deliver more than 5 seconds of electricity simply by continuing to press the taser's trigger.  As long as the trigger is depressed, the electrical shock continues.

5.      Tasers operate in two different modes.  The primary use is to subdue a person at a safe distance by firing two darts or probes that strike and attach to the person.  Thereafter, an electrical discharge produces temporary neuromuscular incapacitation (NMI) which instantaneously and completely immobilizes the person.  "A stun gun inflicts a painful and frightening blow, which temporarily paralyzes the large muscles of the body, rendering the victim helpless."  *Kijowski v. City of Niles*, 2010 U.S. App. LEXIS 7222, at *16 (6th Cir. 2010).

6.      Tasers can also be used in "drive stun" mode.  According to the Taser International Website Manual, drive stun mode is the "pain compliance option."  As the Taser Manual describes it: "Drive-stun Taser use produces a continuous extremely painful electrical shock useful for an officer engaged in close hand to hand contact with a resisting subject; pain forces the resisting subject to stop violently resisting and submit to handcuffing…."

7.      Franklin County Sheriff's deputies are aware of how painful it is to be tased. Near the end of a video tape of the tasing of a female detainee during booking at Franklin County Corrections Center I, a Franklin County deputy asks a police officer from The Ohio State University (OSU) campus if he has ever been tased.  When the officer responded no, the sheriff's

deputy replied, "They hurt like hell." Internal Affairs Report #08-116.

8.     At all times relevant to this Complaint, it was the custom, policy and practice of Franklin County Sheriff's corrections deputies to repeatedly use their tasers in a callous and sadistic manner that violates the Franklin County Sheriff's own regulations for deployment of tasers; departs from well-established standards of law enforcement and corrections professionals; poses substantial and unjustifiable risks to the health, safety and physical integrity of detainees; has caused needless physical harm and mental distress; and violates the constitutional rights of detainees at the Franklin County Corrections Centers.

## II.     JURISDICTION AND VENUE

9.     This court has subject matter jurisdiction over Plaintiff's Complaint pursuant to 28 U.S.C. §§ 1331, 1343(3) and 1343(4). Venue is proper in this district under 28 U.S.C. § 1391 because all parties reside in this district and the events or omissions giving rise to Plaintiff's Complaint occurred in this district.

## III.     PARTIES

10.     Plaintiff Dawn Powell was at all times relevant to this action a resident of Franklin County, Ohio.

11.     Plaintiff Powell is not incarcerated at the time of filing this Complaint.

12.     Defendant Franklin County is a unit of local government organized under the laws of the State of Ohio.

13.     Defendant Zach Scott is the current Sheriff of Franklin County, Ohio. He was appointed to that position on July 1, 2011. He is sued in his official capacity.

14.     Defendant Stephan L. Martin was appointed to be the Acting Franklin County Sheriff on June 2, 2011 after the death of former Sheriff James Karnes. Defendant Stephan Martin served as Acting Sheriff of Franklin County until July 1, 2011.

4

15.     Prior to his appointment as Acting Franklin County Sheriff, Defendant Stephan Martin was the Chief Deputy, Investigations for the Franklin County Sheriff's Office.

16.     As Chief of Investigations, Defendant Stephan Martin was the head of the Internal Affairs Bureau of the Franklin County Sheriff's Office.  The Internal Affairs Bureau is responsible for the investigation of alleged misconduct by members of the Franklin County Sheriff's Office. The Internal Affairs Bureau reviews all use of force reports from Franklin County corrections deputies.  Defendant Stephan Martin is sued in his individual capacity.

17.     On information and belief, Defendant Major Earl Smith acted as Chief Deputy, Investigations for the Franklin County Sheriff's Office during the month of June, 2011 while Defendant Stephan L. Martin was serving as Acting Sheriff.  He is sued in his individual and official capacities.

18.     Defendant Martin Buechner assumed the duties of Chief Deputy, Investigations, for the Franklin County Sheriff's Office.  He is sued in his individual and official capacities.

19.     Defendant Mark Barrett was at all times relevant to this action the Chief Deputy, Corrections for the Franklin County Sheriff's Office.

20.     Defendant Mark Barrett is the deputy in charge of the operations of Franklin County's two correctional facilities, Franklin County Corrections Center I at 370 S. Front Street in Columbus, Ohio (FCCC I) and Franklin County Corrections Center II at 2460 Jackson Pike in Columbus, Ohio (FCCC II).

21.     Defendant Mark Barrett reviews all use of force reports from all Franklin County corrections deputies, including use of force reports involving deployment of tasers.  He is sued in his individual and official capacities.

22.     Defendants Forino, Klumpp, Stobart, Williamson, Derrico and Eing were or are

5

the members of the Franklin County Sheriff's Office Internal Affairs Bureau.

23. As members of the Internal Affairs Bureau, Defendants Forino, Klumpp, Stobart, Williamson, Derrico and Eing reviewed all use of force reports from Franklin County corrections deputies who worked at FCCC I and FCCC II. Defendant Forino is sued in his individual capacity. Defendants Klumpp, Stobart, Williamson, Derrico and Eing are sued in their individual and official capacities.

24. Defendant Edgington is the facility commander for FCCC II.

25. As FCCC II facility commander, Defendant Edgington reviewed all use of force reports from Franklin County corrections deputies who worked at FCCC II. Defendant Edgington is sued in his individual and official capacities.

26. Defendants Schillig, Laura Martin, Jeffrey Barrett, Davis, Williams, Weber, Beaudry, Coakley, Merritt, and Rettig were participants in the tasing of Plaintiff Dawn Powell on May 10, 2011. These Defendants are sued in their individual capacities.

27. Defendant Doug Hahn is a mental health liaison employed by the Franklin County Sheriff's Office. He participated in the tasing of Plaintiff Powell on May 10, 2011. He is sued in his individual capacity.

28. Defendants Stice, Hall, Barnes, Clyburn, King, Maynard and Stickel were participants in the tasing of Plaintiff Powell on May 11, 2011. These Defendants are sued in their individual capacities.

## IV.  POLICY AND PRACTICE OF EXCESSIVE USE OF TASERS BY DEFENDANTS

29. Under Ohio law, the Franklin County Sheriff makes the policy for the county with regard to the operation of his office and discharge of his duties.

30. The Franklin County Sheriff's Office Chief Deputy of Corrections, Defendant Mark Barrett, assigns X26 Tasers to corrections officers at his discretion. A deputy must be at

the rank of corporal or above in order to carry a taser in the corrections facilities.

31.     According to Franklin County Sheriff's Office regulations, corrections deputies may deploy tasers for protection of themselves or other inmates; to control a "combative" inmate; or to disarm an inmate.

32.     Under Franklin County Sheriff's Office regulations, corrections deputies should not use tasers on persons who are handcuffed or otherwise mechanically restrained; on persons who are not resisting by physical force or displaying active aggression; or on persons who are so impaired by mental illness, drugs or alcohol that deputies should realize the person cannot comprehend or comply with orders.

33.     The Franklin County Sheriff's Office Use of Force Report policy states that every time a deputy uses force or observes a use of force, including deployment of the taser, he or she must generate a Use of Force Report which is forwarded through the chain of command. AR801, Section 1.  Each shift supervisor must compile a summary of each use of force report and forward this to Internal Affairs.  AR801, Section 2.3.

34.     Internal Affairs must then review all use of force reports, interview all persons with knowledge of the event, and make a determination of whether or not the use of force was in compliance with department policy, that is, whether the use of force was "justified."  AR801, Sections 2.5 - 2.6.  The Internal Affairs review also includes video tapes of each use of force incident, including tapes made by hand-held cameras operated by deputies.

35.     Internal Affairs then forwards this record and its use of force determination to the Franklin County Sheriff or his designee for review of the entire record.  The Sheriff or his designee may either accept or reject the finding of Internal Affairs.  AR801, Sections 2.7 - 2.8. If the use of force is ultimately determined to be "justified," no discipline is imposed on the

7

deputy or deputies involved.

36.     Thus, the chain of command for reviewing all reports involving use of force, including deployment of tasers, by Franklin County Sheriff's deputies includes shift supervisors, the Internal Affairs Bureau and the Sheriff or his designee.  The Franklin County Sheriff or his designee makes the final determination of whether the use of tasers, or any other use of force, was justified.

37.     Franklin County corrections deputies regularly violate constitutional standards for use of force and the Sheriff's Office regulations on deployment of tasers.

38.     These practices are captured in the written use of force reports and on videotapes recorded by the Franklin County Sheriff's Office in scores of cases since at least January 1, 2008 up to the present day.

39.     Franklin County corrections deputies regularly use tasers in situations where the person does not present a realistic threat of violent behavior or harm to self or others, and routinely and deliberately use tasers as first strike weapons without employing or even considering less painful or harmful control tactics.

40.     In case after case, deputies tased people when the person was greatly outnumbered by a team of deputies who were able to physically overpower and control the individual, or accomplish the task at hand, thereby eliminating any objective threat to the person's own safety or that of the deputies.

41.     It is common for deputies to tase a person whose only offense was failure to obey deputies' verbal commands, which is classified as a "minor rule violation" that does not pose a threat to staff or inmates under the Sheriff's own administrative regulation.[1]  Thus, the threshold for use of the taser is often only a minor breach of jail discipline.

---

[1]  Under AR 804 5.1.  "Minor rule violations shall include….failure to comply with an order by staff."

42.     Comparisons of the videotapes to the deputies' written use of force reports also show that deputies often embellish or misrepresent the circumstances under which people were tased.  The written reports describe the persons they tased as "combative," "unruly" or "resisting" when the actual video showed that the person was yelling and/or cursing at deputies in a manner that was irritating, but not a physical threat.

43.     In other instances, the "resistance" was passive, not combative or active, in nature, such as a person refusing to place hands behind the back, failing or refusing to remove a piece of jewelry or clothing, or a person who crossed his or her arms across the chest in self-protection against a forced cuffing or stripping.

44.     For example, deputies tased a young man who was lying on a bench in the "fishbowl," a holding cell with large windows for observation, when he verbally refused to comply with orders to strip naked and put on a safety gown.  The tasing of this man was reviewed by Internal Affairs and found to be "justified."  Internal Affairs Report #08-480.

45.     In many other instances, deputies tased persons for being "uncooperative."  These individuals were not violent or threatening violence.  They were simply so impaired by alcohol or drugs that they were incapable of comprehending or complying with the deputies' commands, as shown in a video that depicts a young male arrested on a misdemeanor charge who is clearly cognitively impaired by drugs or alcohol.  In the video of this case, the corporal in charge told the man "I don't know what you're on."

46.     Several deputies had taken this man to a cell in order to change him from his street clothes into jail clothes.  The corporal, who had a taser, informed the other deputies that "he hasn't been a threat to us but if I say 'taser' move out of the way."

47.     The video shows that the young man complied with the corporal's commands to

remove his ring, shirt, shoes and pants but did so slowly, with deputies needing to assist at times. The man had removed all clothing but his underwear when the corporal ordered him to sit down on a bench.  The man remained standing after several commands to sit down.  The corporal then tased him multiple times, including drive stuns, and pistol whipped him with the taser.  The deputy's use of the taser in this case was found "justified."  Internal Affairs Report #09-258.

48.     Corrections deputies also routinely and deliberately tase people who are particularly vulnerable because of mental disabilities.  Deputies often respond inappropriately to such persons in a manner that escalates conflict and actually increases the likelihood that excessive force will be used.  This practice continues even after the settlement agreements and promulgation of the new Franklin County Sheriff's Office policy on taser deployment.

a)     One video depicts deputies who came to the cell of an inmate with mental illness to move him to another location.  When deputies opened the cell door the inmate was holding a mat in front of him and speaking unintelligibly.  The inmate's actions and demeanor show that he was disoriented.  A sergeant tased this inmate for not standing up and tased him again for moving his arms and legs, stating "I'm tired of playing with you."  The sergeant continued to tase this mentally impaired inmate when he tried to crawl under the bed.  The inmate was finally pulled out of the cell, still clutching the mat.  He was put in leg irons and tased again when he would not let go of the mat. The use of force in this instance was found "justified."  Internal Affairs Report #09-018.

b)     In another video, deputies came to a cell ostensibly to assist a mentally ill inmate who was banging his head against his bed.  Instead of entering the cell to remove the inmate, a team of deputies stood around outside the cell while a

sergeant repeatedly tased this inmate a total of fourteen times because he would not slide out of the cell by himself.  This use of force was found to be "justified."  Internal Affairs Report #09-390.  Andrew Eing, the sergeant who repeatedly tased this inmate, is now a member of the Internal Affairs Bureau.

c)      The video and report for Internal Affairs Report #11-148 depicts an inmate who showed clear signs of mental illness and confusion by repeatedly stating, "I want to talk to Jesus."  The video depicts six deputies in a cell with the inmate:  four deputies holding him down in a painful, prone position with his legs crossed; a fifth deputy standing by; and the supervising corporal who deployed the taser against the inmate at very close range while he was under control by numerous officers.  The corporal's use of force reports states that the inmate was thrashing violently, but it appears from the video that the inmate's movements were related to the painful restraint of his legs.

d)      The incident report for Internal Affairs Report #11-240 states that the inmate was "pacing in circles and talking incoherently" when deputies arrived at his cell.  This inmate continually responded "please, please, please" to deputies' commands.  Deputies interpreted his actions as refusal or resistance, when he was experiencing mental distress.  The supervising corporal tased this inmate immediately after telling him "have a seat or I will tase you."  Then a team of five deputies forcibly placed the inmate in a prostraint chair, during which he was tased twice more in both probe and drive stun mode.

e)      The inmate in Internal Affairs Report #11-281 was being changed into a safety gown per the Mental Health Liaison at the time he was tased.  Although the

supervising corporal's report stated that the inmate was "not being violent," the corporal summoned a cell extraction team, then used OC spray on the inmate. According to the deputies' reports, the inmate was not displaying physical force or active aggression when he was tased immediately upon opening his cell door; he was trying to wash the OC spray from his eyes.  The deputies' purpose for all of this was to change the inmate into a safety gown, yet they left him naked in a cell without putting the gown on him.

f)      Prior to the taser deployment involving the inmate in Internal Affairs Report #11-256, this inmate had been placed on safety watch six times, placed in a single cell for mental health reasons, and placed in a prostraint chair due to self-inflicted injuries.  The video of this incident depicts deputies who were struggling to push the inmate's arms back through the food trap of his cell so the trap could be closed.  A sergeant then administered a long and painful drive stun to the subject's right arm, which only caused the inmate to struggle even more.  Finally the deputies abandoned their attempts to close the food trap and simply left the inmate.  Tasing this inmate failed to achieve the objective, and in the end appeared to have been unnecessary.

49.     The Franklin County Sheriff, as the policy maker for the Franklin County Sheriff's Office, as well as Deputy Chiefs Mark Barrett, Stephan Martin, Buechner and Smith, the members of the Internal Affairs Bureau and the facility commanders of the Franklin County Corrections Centers are responsible for the policy and practice of excessive and abusive use of tasers by Franklin County Sheriff's corrections officers.  This is because, as set out in this Complaint:

a)       They routinely ratify corrections deputies' misuse of tasers by reviewing the use of force reports and videotapes and finding the use of tasers to be "justified."

b)        They fail to discipline deputies whose use of tasers violates the Franklin County Sheriff's own written policies for deployment of tasers; departs from well-established standards of law enforcement and corrections professionals; poses substantial and unjustifiable risks to the health, safety and physical integrity of the persons tased; causes needless physical harm and mental distress; and violates the constitutional rights of persons in the custody of the Franklin County Corrections Centers.

c)       As evidenced by the deputies' repeated misuse of tasers as set forth in this Complaint, they have failed to properly train corrections deputies to use tasers in accordance with the Franklin County Sheriff's Office written policies; to use tasers in accordance with manufacturer's warnings for safe use on subjects; to use tasers in accordance with accepted law enforcement principles for use of force; and to use tasers in accordance with the federal constitutional rights of persons in custody to be free from excessive force.

50.    The policies and practices of Defendants Scott, Mark Barrett, Stephan Martin, Buechner, Smith, Forino, Klumpp, Stobart, Williamson, Derrico, Eing and Edgington in their official and individual capacities constitute deliberate indifference to the unconstitutional use of tasers that in turn makes Defendant Franklin County accountable for injuries to the Plaintiff in this action.

## V.    PLAINTIFF DAWN POWELL - STATEMENT OF FACTS

51.    Columbus police officers arrested Dawn Powell at 7:20 p.m. on May 9, 2011 for

allegedly failing to pay for a meal she ate at the Eastland Buffet.

52.     Ms. Powell was charged with three misdemeanors: petty theft, obstructing official business, and resisting arrest.  The police officers took her to FCCC II for booking.

53.     Ms. Powell's jail records indicate that she was booked at 1:30 am on May 10, 2011.  She was placed on a safety watch in a north booking cell.

54.     The reports of two jail supervisors, Lt. Ed Schillig and Cpl. Laura Martin, indicate that Ms. Powell was tased during the intake process.

55.     Lt. Schillig stated "supervision had prior knowledge that inmate Powell had resisted during her intake process and the TASER was deployed to help control her."

56.     Cpl. Laura Martin's report states that "Doug Hahn from mental health told me that Inmate Powell, Dawn #11-11856…could be a potential problem as she was uncooperative at intake and had to be tazed."

57.     Based on records provided by the Franklin County Sheriff's Office, there is no documentation that Ms. Powell was tased during her intake process on May 10, 2011 as Defendant Hahn reported to Cpl. Laura Martin.

58.     At around 12:30 p.m. on May 10, 2011, deputies came to Ms. Powell's cell in the north booking area to move her to a single cell in the housing area of the jail.  Jail records state that during this move she was to be placed in handcuffs, leg irons, a belly chain, and be accompanied by two deputies and a camera "per mental health Doug" (Defendant Doug Hahn).

59.     The videos of this incident show Mental Health Liaison, Doug Hahn, standing outside Ms. Powell's booking cell when Cpl. Laura Martin asked her to come to the open food trap to be handcuffed for the move.  Ms. Powell was screaming, crying and making strange guttural noises.  She did not respond to Cpl. Laura Martin.  Defendant Hahn did not make any

effort to communicate with Ms. Powell or to assist her in any way.

60.     Lt. Ed Schillig opened the food trap to Ms. Powell's cell and ordered her to approach the food trap to be handcuffed.  Ms. Powell was sitting on a bench, grunting and moving her hands.

61.     Lt. Schillig warned Ms. Powell that if she did not cooperate she would be pepper sprayed, tased, and a team of deputies would be sent in to get her out.  Lt. Schillig's report states that she "did not appear to recognize the fact that I was talking to her nor did she ever respond to me."  Lt. Schillig then sprayed several bursts of OC spray through the food trap into Ms. Powell's cell, trying to hit her face.

62.     After spraying Ms. Powell with OC spray and closing the food trap to her cell, Lt. Schillig assembled a cell extraction team.  Defendants Jeffrey Barrett, Davis, Williams, Weber, Coakley and Beaudry were the team members.  Defendant Laura Martin was also present.  Defendant Merritt filmed the incident.

63.     The team and Lt. Schillig then returned to Ms. Powell's cell.  Mental Health Liaison, Doug Hahn, continued to stand outside her cell but did not attempt to communicate with Ms. Powell or assist her in any way.

64.     As the cell extraction team and Mental Health Liaison Hahn stood by, Lt. Schillig told Ms. Powell he would send the cell extraction team in to get her if she did not cooperate. Ms. Powell was screaming and crying.  She did not look at the cell door.  The lieutenant's report describes her as "bouncing her legs up and down and making incomprehensible sounds such as grunts and howls."

65.     Defendant Rettig then opened the door to Ms. Powell's cell.  She was sitting on a bench and did not look toward the officers.  Lt. Schillig stepped into Ms. Powell's cell and tased

15

her almost immediately.  As she fell to the floor, team members placed her down on the floor face first and handcuffed her.

66.     Deputies then dragged Ms. Powell out of the cell on her stomach.  She lay on the floor, crying, while Mental Health Liaison Hahn brought the restraint chair over for the deputies to use.

67.     Once deputies placed Ms. Powell in the restraint chair, Defendant Hahn also retrieved a "spit hood" for deputies to place over her face.  At no time did Defendant Hahn attempt to communicate with Ms. Powell or assist her in any way.

68.     Ms. Powell was then taken to her single housing cell without further incident.

69.     The following day, May 11, 2011, jail psychiatrist, Dr. Tara Mayes, signed an application for an emergency admission of Ms. Powell to Twin Valley Behavioral Healthcare psychiatric hospital.  Dr. Mayes' application stated that Ms. Powell was "Psychotic.  Believes she is Jesus.  Refusing food & medications.  Unable to care for self in current condition.  Requires inpatient stabilization."

70.     At approximately 4:30 p.m. on May 11, 2011, deputies came to Ms. Powell's cell to take her to Twin Valley.

71.     Sgt. Matthew Stice assembled a response team for this purpose.  Sgt. Stice explained in his report that he did so on the recommendation of Mental Health Liaison Hahn, who advised Sgt. Stice that Ms. Powell had to be cell extracted the day before "and would most likely not cooperate today either."

72.     The other members of the response team were Defendants Hall, Clyburn, King and Maynard.  Defendant Stickel filmed the incident with a hand held camera.

73.     Sgt. Stice spoke to Ms. Powell through the food trap and asked her to come up

and be handcuffed so they could take her out of jail.  Ms. Powell apparently called him the "devil" because Sgt. Stice replied, "no, I'm not the devil."

74.     Sgt. Stice asked Ms. Powell to come and be cuffed several times.  Sgt. Stice told Ms. Powell that he would tase her if she did not cooperate.  She did not respond.

75.     Defendant Barnes opened the door to Ms. Powell's cell.  The video shows that Ms. Powell was simply standing at the rear of her cell looking out a window with her back to the deputies when Sgt. Stice and the response team entered her cell.  Sgt. Stice tased Ms. Powell immediately, although she was not physically resisting or aggressive in any way.

76.     As she fell back, the response team placed her on the bed and then flipped her over, face down, as defendant Clyburn pressed down on her with a plastic shield.  Deputies placed Ms. Powell in handcuffs and leg irons.

77.     As deputies escorted Ms. Powell from her cell to a van for transport to Twin Valley, she was crying and making unintelligible noises.  During this entire incident Ms. Powell offered no physical or active resistance of any kind.

78.     Ms. Powell was unresponsive when she arrived at Twin Valley.  The psychiatric hospital staff called the emergency squad and she was taken to the emergency room at Mount Carmel West Hospital.  Once her symptoms resolved, Ms. Powell was returned to FCCC II.

79.     The following day, May 12, 2011, jail psychiatrist Dr. Mayes again applied for Ms. Powell's emergency admission to Twin Valley, stating that she "remains psychotic."

80.     Ms. Powell was admitted to Twin Valley from May 12, 2011 - May 19, 2011. Upon stabilization, she was returned to FCCC II on May 19, 2011 and bonded out that same day.

81.     Lt. Schillig's deployment of OC spray and the taser against Ms. Powell on May 10, 2011, was reviewed by the chain of command, Lt. Williamson of Internal Affairs and

17

deputy chief Earl Smith, and found to be "justified" uses of force.

82.    Sgt. Stice's deployment of the taser against Ms. Powell on May 11, 2011, was reviewed by the chain of command, Sgt. Derrico of Internal Affairs and then-deputy chief Stephan Martin, and found to be a "justified" use of force.

## VI.    DAWN POWELL INDIVIDUAL CAUSE OF ACTION FOR EXCESSIVE FORCE, 42 U.S.C. § 1983 AS TO DEFENDANTS SCHILLIG, LAURA MARTIN, JEFFREY BARRETT, DAVIS, WILLIAMS, WEBER, BEAUDRY, COAKLEY, MERRITT, RETTIG, AND HAHN (MAY 10, 2011 INCIDENT)

83.    At all times relevant to this Complaint, Defendants Schillig, Laura Martin, Jeffrey Barrett, Davis, Williams, Weber, Beaudry, Coakley, Merritt, Rettig and Hahn were state actors by virtue of their employment with the Franklin County Sheriff's Office.

84.    42 U.S.C. § 1983 provides that no person, acting under color of state law, shall deprive a citizen of his rights arising under the Constitution or federal laws.

85.    As an arrestee, Plaintiff Powell was protected by the Fourth Amendment's protection against use of excessive force by law enforcement.

86.    Under the Fourth Amendment, law enforcement officers may only use reasonable force, that is, the amount of force that is reasonable to protect officers from a perceived threat.

87.    The uses of force (OC spray and deployment of the taser) against Plaintiff Powell by Defendants Schillig, Laura Martin, Jeffrey Barrett, Davis, Williams, Weber, Beaudry, Coakley, Merritt, Rettig and Hahn were unreasonable and willful, callous and gratuitous acts that violated Plaintiff Powell's Fourth Amendment right to be free from the use of excessive force.

88.    The fact that Defendants Laura Martin, and Hahn were not the ones who used OC spray on Ms. Powell does not diminish their culpability for this use of force.  Defendants Laura Martin and Hahn were present, participating and were aware that Lt. Schillig was going to apply OC spray to Ms. Powell, and had the opportunity to stop it from occurring.

18

89.     The fact that Defendants Laura Martin, Jeffrey Barrett, Davis, Williams, Weber, Beaudry, Coakley, Merritt, Rettig and Hahn were not the officers who deployed the taser against Ms. Powell does not diminish their culpability.  These Defendants were present and participating in the cell extraction, were aware that Defendant Schillig was going to tase Ms. Powell while they controlled her, and had the opportunity to stop it from occurring.

90.     As a direct and proximate result of the excessive use of force by Defendants Schillig, Laura Martin, Jeffrey Barrett, Davis, Williams, Weber, Beaudry, Coakley, Merritt, Rettig and Hahn, Plaintiff Powell suffered compensable physical pain and injuries as well as emotional distress.

91.     Plaintiff Powell is also entitled to punitive damages because Defendants Schillig, Laura Martin, Jeffrey Barrett, Davis, Williams, Weber, Beaudry, Coakley, Merritt, Rettig and Hahn acted with reckless or callous indifference to Plaintiff's Fourth Amendment right to protection against the use of excessive force.

## VII.   DAWN POWELL INDIVIDUAL CAUSE OF ACTION FOR EXCESSIVE FORCE,  42 U.S.C. § 1983 AS TO DEFENDANTS STICE, HALL, BARNES, CLYBURN, KING, MAYNARD, AND STICKEL (MAY 11, 2011 INCIDENT)

92.     At all times relevant to this Complaint, Defendants Stice, Hall, Barnes, Clyburn, King, Maynard, and Stickel were state actors by virtue of their employment with the Franklin County Sheriff's Office.

93.     42 U.S.C. § 1983 provides that no person, acting under color of state law, shall deprive a citizen of his rights arising under the Constitution or federal laws.

94.     As an arrestee, Plaintiff Powell was protected by the Fourth Amendment's protection against use of excessive force by law enforcement.

95.     Under the Fourth Amendment, law enforcement officers may only use reasonable force, that is, the amount of force that is reasonable to protect officers from a perceived threat.

96.    The deployment of the taser against Plaintiff Powell by Defendants Stice, Hall, Barnes, Clyburn, King, Maynard, and Stickel was a willful, callous and gratuitous act that violated Plaintiff Powell's Fourth Amendment right to be free from the use of excessive force.

97.    The fact that Defendants Hall, Barnes, Clyburn, King, Maynard, and Stickel were not the officers who tased Ms. Powell does not diminish their culpability.  These deputies were present and participating in this incident and were aware that Defendant Stice was going to tase Ms. Powell while they controlled her, and had the opportunity to stop it from occurring.

98.    As a direct and proximate result of the excessive use of force by Defendants Stice, Hall, Barnes, Clyburn, King, Maynard, and Stickel, Plaintiff Powell suffered compensable physical pain and injuries as well as emotional distress.

99.    Plaintiff Powell is also entitled to punitive damages because Defendants Stice, Hall, Barnes, Clyburn, King, Maynard, and Stickel acted with reckless or callous indifference to Plaintiff's Fourth Amendment right to protection against the use of excessive force.

**VIII.  DAWN POWELL INDIVIDUAL CAUSE OF ACTION FOR EXCESSIVE FORCE, 42 U.S.C. § 1983, AS TO DEFENDANTS FRANKLIN COUNTY, FRANKLIN COUNTY SHERIFF, CHIEF DEPUTY MARK BARRETT, CHIEF DEPUTY STEPHAN MARTIN, CHIEF DEPUTY MARTIN BUECHNER, MAJOR EARL SMITH, ROBERT FORINO, STEPHANIE KLUMPP, JEFFREY STOBART, CHARLES WILLIAMSON, MICHAEL DERRICO, ANDREW EING, AND FCCC II COMMANDER DOUG EDGINGTON (MAY 10 AND 11, 2011 INCIDENTS)**

100.    Defendants Franklin County Sheriff, Mark Barrett, Stephan Martin, Buechner, Smith, Forino, Klumpp, Stobart, Williamson, Derrico, Eing and Edgington are all state actors by virtue of their employment with the Franklin County Sheriff's Office.

101.    Defendants Franklin County Sheriff, Mark Barrett, Stephan Martin, Buechner, Smith, Forino, Klumpp, Stobart, Williamson, Derrico, Eing and Edgington have created a policy and practice of excessive and abusive use of tasers by Franklin County Sheriff's corrections

officers because:

> a) They routinely ratify corrections deputies' misuse of tasers by reviewing the use of force reports and videotapes and finding the use of tasers to be "justified," as they did in Plaintiff Powell's case.

> b) As in Plaintiff Powell's case, they fail to discipline deputies whose use of tasers violates the Franklin County Sheriff's own written policies for deployment of tasers; departs from well-established standards of law enforcement and corrections professionals; poses substantial and unjustifiable risks to the health, safety and physical integrity of the persons tased; causes needless physical harm and mental distress; and violates the constitutional rights of persons in the custody of the Franklin County Corrections Centers.

> c) As evidenced by the deputies' repeated misuse of tasers as set forth in this Complaint, Defendants Franklin County Sheriff, Mark Barrett, Stephan Martin, Buechner , Smith, Forino, Klumpp, Stobart, Williamson, Derrico, Eing and Edgington have failed to properly train corrections deputies to use tasers in accordance with Sheriff's Office written policies; to use tasers in accordance with manufacturer's warnings for safe use on subjects; to use tasers in accordance with accepted law enforcement principles for use of force; and to use tasers in accordance with the federal constitutional rights of persons in custody to be free of excessive force.

102. The policies and practices of Defendants Franklin County Sheriff, Mark Barrett, Stephan Martin, Buechner , Smith, Forino, Klumpp, Stobart, Williamson, Derrico, Eing and Edgington in their official and individual capacities constitutes deliberate indifference that in

turn makes Defendant Franklin County accountable for injuries to Plaintiff Powell on May 10 and May 11, 2011.

103.    Defendants Franklin County Sheriff, Mark Barrett, Stephan Martin, Buechner, Smith, Forino, Klumpp, Stobart, Williamson, Derrico, Eing and Edgington acted with deliberate indifference by their failure to train deputies in the proper use of reasonable force and by ratifying the use of excessive and gratuitous force against Plaintiff Powell on May 10 and May 11, 2011 while acting under color of state law.

104.    These actions and failures to act by these Defendants caused Plaintiff Powell to be subjected to excessive and unreasonable force on May 10 and May 11, 2011 in violation of the Fourth Amendment, from which she suffered compensable physical pain and injuries as well as emotional distress.

105.    Plaintiff Powell is also entitled to punitive damages against these Defendants because they acted with reckless or callous indifference to Plaintiff's Fourth Amendment right to protection against the use of excessive force.

## IX.    JURY DEMAND

106.    Plaintiff Dawn Powell demands a trial by jury of all issues triable by a jury.

## X.    PRAYER FOR RELIEF

Therefore, Plaintiff Dawn Powell requests that this Court:

A.      Assume jurisdiction over this matter;

B.      Grant judgment in her favor, and against the Defendants, individually and collectively, for compensatory damages for Plaintiffs' injuries, physical pain and suffering and emotional distress in an amount to be proven at trial;

C.      Award punitive damages to Plaintiff Powell against the Defendants, individually and collectively, in an amount to be proven at trial;

D.      Award Plaintiff her attorney fees and costs as permitted by law; and

E.      Provide such other relief as is just and equitable.

Respectfully submitted,

s/Kristen Henry
Trial Attorney for Plaintiff
Kristen Henry (0082382)
khenry@olrs.state.oh.us
Kerstin Sjoberg-Witt (0076405)
ksjoberg-witt@olrs.state.oh.us
Legal Director
OHIO LEGAL RIGHTS SERVICE
50 W. Broad Street, Suite 1400
Columbus, Ohio 43215
(614) 466-7264 - telephone
(614) 644-1888 - fax